UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RON BERIE and JENNIFER BERIE, individually and as
natural guardians for their infant child C.B.,

                              Plaintiffs,                      5:18-cv-00119 (BKS/TWD)

v.

INVESTIGATOR JEFFREY STEVENSON,

                              Defendant.
_____

**Appearances:**

*For Plaintiffs*:
JenniElena Rubino
Rubino Law Firm, P.C.
1 Alexander Street, Suite 1222
Yonkers, NY 10701

*For Defendant*:
Letitia James
Attorney General of the State of New York
Timothy P. Mulvey
Assistant Attorney General, of Counsel
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

I.     INTRODUCTION

       This action arises from the investigation and prosecution of an alleged rape and criminal sex act, for which Plaintiffs' minor son, C.B., was ultimately acquitted. (Dkt. No. 1, ¶¶ 6, 14, 33). Plaintiffs bring this action under 42 U.S.C. § 1983 and New York law against Defendant New York State Police Investigator Jeffrey Stevenson, asserting claims for false arrest in violation of the Fourth Amendment, malicious prosecution in violation of the Fourth

Amendment and New York law, and intentional infliction of emotional distress under New York law. (*Id.* ¶¶ 37–48). Defendant moved to dismiss the Complaint on May 23, 2018. (Dkt. No. 10). On July 18, 2018, Plaintiffs filed their response in opposition to the motion to dismiss and cross-moved to amend the Complaint, (Dkt. No. 15), but failed to attach an unsigned copy of a Proposed Amended Complaint as required by Local Rule 7.1(a)(4). Plaintiffs did not submit a Proposed Amended Complaint until August 31, 2018, (Dkt. No. 20), after repeated prompting by the Court, (Dkt. Nos. 18, 19). Plaintiffs, however, failed to file any exhibits with their Proposed Amended Complaint. (*See* Dkt. No. 20). The Court therefore ordered Plaintiffs to refile the Proposed Amended Complaint together with all exhibits referenced in the Proposed Amended Complaint. (*See* Dkt. No. 21). Plaintiffs have failed to respond to that Order. Defendant did not file supplemental briefing in further reply to Plaintiffs' cross-motion to amend, despite being afforded the opportunity to do so. (*See* Sept. 6, 2018 Text Notice). For the following reasons, Defendant's motion to dismiss is granted.

## II. PLAINTIFFS' CROSS-MOTION TO AMEND

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where plaintiffs seek to amend their complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)). Here, Defendant has had the opportunity to respond to the proposed Amended Complaint. (*See* Sept. 6, 2018 Text Notice). While the Court would therefore generally consider the merits of the motion to dismiss in light of the Proposed Amended Complaint, Plaintiffs have failed to submit the exhibits referenced in the Proposed Amended Complaint, as directed by this

Court. (Dkt. No. 21). Plaintiffs' motion to amend is therefore denied.[1] *See Schwasnick v. Fields*, No. 08-cv-4759, 2010 WL 2679935, at \*11, 2010 U.S. Dist. LEXIS 65958, at \*29 (E.D.N.Y. June 30, 2010) ("The court may also deny leave to amend where the Plaintiff[] fails to submit a proposed pleading and does not explain why.").

## III. FACTS[2]

On the evening of March 12, 2016, C.B., the fifteen-year-old son of Plaintiffs Ron and Jennifer Berie, attended the birthday party of another minor, M.S., at a residence in Adams, New York. (Dkt. No. 1, ¶¶ 1, 5–8). At approximately 11:30 p.m., C.B. and D.W., another minor, "willfully engaged in oral sex and sexual intercourse in the downstairs pantry of the residence, which both parties consented to." (*Id.* ¶ 8). "[I]n the immediate hours and days" afterward, D.W. falsely "communicated to mutual friends that . . . C.B. raped her and forced her to perform oral sex in the pantry." (*Id.* ¶ 9). D.W. also told her mother about the "alleged rape incident with . . . C.B. . . . within days of March 12, 2016." (*Id.* ¶ 10–11). D.W. and her mother "did not report the allegations to the New York State Police Department" or "to any medical services to complete a rape kit or any type of medical investigation." (*Id.*). "[O]ne month after the incident," D.W.'s father "discovered the events that occurred at minor M.S.'s party" and "was adamant that the

---

[1] In any event, the new allegations in the Proposed Amended Complaint, Dkt. No. 20-1, ¶¶ 33–45, concern post-arrest restrictions on C.B.'s liberty; they are not relevant to this Court's ruling regarding probable cause. (*See* Dkt. No. 16-1, at 4). Thus, even if Plaintiffs had filed the complete Proposed Amended Complaint, the Court would deny the Plaintiffs' cross-motion to amend as futile. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").

[2] All facts, taken from the Complaint and the documents attached thereto, are assumed to be true for purposes of the parties' motions. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). "However, where allegations set out in the complaint are contradicted by other matters asserted or by materials attached to or incorporated by reference in the complaint, the Court is not obliged to credit the allegations in the complaint." *Brown v. New York City Hous. Auth.*, No. 05-cv-10332, 2006 WL 1378599, at \*1, 2006 U.S. Dist. LEXIS 30193, at \*4–5 (S.D.N.Y. May 17, 2006); *see also Rapoport v. Asia Elec. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (stating that, where documents attached to the complaint or incorporated by reference "contradict the allegations of the . . . complaint, the documents control and this Court need not accept as true the allegations in the . . . complaint").

events be reported to the New York State Police Department." (*Id.* ¶ 13). Defendant Stevenson's narrative report indicates that, on April 11, 2016, D.W.'s mother contacted Defendant Investigator Jeffrey Stevenson of the New York State Police to "report sex abuse to her 15 year old daughter." (Dkt. No. 1-2, at 1). Defendant Stevenson "advised [D.W.'s mother] to respond to SP Adams with her daughter," where he "interviewed and obtained a supporting deposition from D.W." (*Id.*).

Later that day, D.W. submitted a supporting deposition to Defendant Stevenson, which is attached to the Complaint. (*See* Dkt. No. 1-3). In her supporting deposition, D.W. described the incident as follows: (1) "On March 12, 2016, [D.W.'s] parents dropped [her] off at M.S.'s residence . . . for M.S.'s 16th birthday party"; (2) there were nine of D.W.'s friends, all in tenth grade, at M.S.'s residence; (3) the party took place in "M.S.'s basement, which is comprised of a large open room," attached to which "is a small room," used as a pantry, "divided from the large room with [a] hanging blanket"; (4) M.S.'s parents remained upstairs for the duration of the party; (5) C.B. and D.W., who knew each other prior to the party but attended different schools at the time, "would text each other" on occasion "to stay in touch"; (6) after D.W. "arrived at the party, [her] mom sent [her] a text, warning [her] not to go anywhere alone with C.B."; (7) "during the party, M.S. told [D.W.] to have self respect for [herself] and warned [her] not to do anything [with C.B.] that [she] would regret"; (8) "during the party [D.W.] sat on a couch next to C.B. and he put his hand on [her] leg," and D.W. "had no issue with this"; (9) "during the party [C.B] grabbed [D.W.'s] butt," in response to which D.W. "told C.B. to stop [and] he did stop"; (10) while playing "truth or dare," C.B and D.W. kissed "in the open room with everyone watching"; (11) C.B. asked M.S. "if [C.B.] and [D.W.] could use his bedroom," a request D.W. characterized as "all serious"; (12) D.W., who "wanted to talk privately with C.B. to tell him to

4

stop, . . . took C.B. into the small room off of the open room," where they "talked behind the blanket . . . so others could not see [them]"; (13) D.W. "told C.B. [that] he needed to stop" and "that he wasn't acting appropriately," to which C.B. responded "just do it," which D.W. believed "meant sex"; (14) C.B. and D.W. kissed, and C.B. "pulled his pants and underwear down" and "said 'it's ok, do it'"; (15) when D.W. "tried to walk out" of the pantry, "C.B. pulled down on [her] arms and put his hand on [D.W.'s] head" and "pulled [her] head towards his penis"; (16) "although [D.W.] didn't want to, [she] performed oral sex on C.B. . . . for about 30 seconds"; (17) D.W. "got up [and C.B.] unbuttoned [her] jeans"; (18) D.W. "said 'no,' but [C.B.] didn't listen"; (19) C.B. "had [D.W.] turn around" and "from behind [her], C.B. put his penis into [her] vagina," which "hurt," but "[she] believed [C.B.] only partially penetrated [her]"; (20) C.B. "laid down on the concrete floor" and "told [D.W.] to get on top of him," to which D.W. responded "this isn't going to work"; (21) D.W. "did get on top of [C.B.], and he did try to have intercourse with [her], but it still hurt"; (22) D.W. "got up and put [her] pants back up" and sent a text to M.S. saying "please come here right now"; (23) when M.S. arrived, "C.B.'s pants were still down" and D.W. "was dressed"; (24) D.W. "went upstairs to the bathroom and cried," and "asked G.B. to have her mom come and get [them]"; (25) "M.S. told C.B. to leave, but [C.B.] ended up staying the night"; (26) G.B.'s mother "gave [D.W.] a ride home"; (27) D.W. called C.B.'s girlfriend, J.M., and "told J.M. everything that happened"; (28) "J.M. was not mad at [D.W.], and was actually glad that [D.W.] called to tell her"; (29) after "the incident, [D.W.] received one text from C.B." asking "why [D.W. was] talking to B.B., C.B.'s older brother"; (30) D.W. "did not respond to C.B. and [she] blocked him." (Dkt. No. 1-3, at 1–2).

On April 14, 2016, following the interview with D.W., Defendant Stevenson "discussed the details of [the] case with Jefferson [County] Attorney Terry Brennan" and "provided Mr.

5

Brennan a copy of all case-related documents." (Dkt. No. 1-2, at 3). Brennan told Defendant Stevenson "that, at this point, he believe[d] this case is prosecutable criminally," to which Defendant Stevenson responded that he would "continue the investigation to gather additional evidence." (*Id.*).

On April 15, 2016, Defendant Stevenson interviewed M.S., at whose residence the March 12, 2016 incident took place. (Dkt. No. 1-2, at 3; Dkt. No. 1-5, at 1–2). M.S. told Defendant Stevenson that, on the night of the party, "C.B. stated, perhaps a couple of times, that [C.B.] was going to have sex with D.W. when she got there," but that M.S. "did not take this seriously, as he often tries to be funny." (Dkt. No. 1-5, at 1). M.S. told Defendant Stevenson that he saw C.B. put his hand on her leg, but that D.W. "did not seem to want to be touched by C.B., as she moved his hand away" and "told [him] to stop." (*Id.* at 2). C.B. and D.W. went into the pantry for five to ten minutes during the party. (*Id.*). While they were in the pantry, M.S. "received a text from D.W." asking M.S. to "come here," but M.S. did not "recall if he went to the pantry or not." (*Id.*). "After a minute or two, someone . . . took the blanket down," and C.B. "walked out casually and sat down." (*Id.*). D.W. "sat down next to" M.S., and texted him saying that they "needed to talk." (*Id.*). M.S. "could tell that D.W. was really upset and she appeared sad." (*Id.*). D.W. told M.S. that C.B. "forced her down" and "made her" perform oral sex on him. (*Id.*). D.W. was "crying a lot" and "punched the brick wall." (*Id.*). M.S. told C.B. that "he couldn't stay the night as planned" and that he "didn't want to talk" to C.B. (*Id.*). M.S. called C.B. after the party to "get his side of what had happened," and "C.B. said that what happened was consensual" and that "at the party, D.W. was "winking at him." (*Id.*). M.S. said that he had been "informed . . . that D.W. [was] not wink[ing], and so C.B. saying this upset" him. (*Id.*). M.S. "went off on C.B. and [C.B]

6

hung up." (*Id.*). M.S. told Defendant Stevenson that another person at the party, W.L., told M.S. that he saw C.B. naked in the pantry. (*Id.*).[3]

On May 4, 2016, Defendant Stevenson interviewed G.B., another party attendee. (Dkt. No. 1-2, at 5; Dkt. No. 1-4, at 1–2). In her supporting deposition, G.B. indicated that C.B. and D.W. were in the pantry for ten to fifteen minutes. (Dkt. No. 1-4, at 1). G.B. was sitting with M.S. when he received a text from D.W., asking M.S. "to come to the pantry right away." (*Id.* at 2). G.B. and M.S. "responded to the pantry" and "ripped the blanket off the door" and saw D.W. and C.B. "standing, apart from each other." (*Id.*). D.W. was "fully dressed and using her cellphone," and C.B.'s pants and underwear were down to his knees. (*Id.*). C.B. "was mad" and "pulled up his pants and walked out." (*Id.*). G.B. said that "D.W. was upset" and "hysterical and couldn't talk well." (*Id.*). D.W. told G.B. that "C.B. touched her" in the pantry and "pushed her head down and that she gave him oral sex," but that she "didn't want to" and "didn't want it to happen." (*Id.*). D.W. further told G.B. that C.B "laid down on the ground and told her to have sex" and that "they did have sex, meaning sexual intercourse." (*Id.*). D.W. told G.B. that C.B. used a condom. (*Id.*).

Defendant Stevenson's narrative report indicates that, on May 12, 2016, he "provided Jefferson Co. Attorney Brennan all new case related paperwork for his review." (Dkt. No. 1-2, at 6). On May 18, 2016, Defendant Stevenson "contacted [Jefferson County] Attorney Brennan and again discussed the details" of the investigation and "advised [Brennan] that [he] had not yet interviewed the suspect." (*Id.*). Brennan told Defendant Stevenson that, "[w]ith the information and evidence developed to this point, . . . he believe[d] this case [was] prosecutable as Rape in

---

[3] The documents attached to the complaint indicate that Defendant Stevenson attempted to speak to W.L. on May 6, 2016, but that W.L.'s mother "declined to allow [Defendant Stevenson] to interview their son." (Dkt. No. 1-2, at 6).

7

the 3rd Degree and Criminal Sex Act in the 3rd Degree." (*Id.*). On March 23, 2016, C.B.'s attorney notified Defendant Stevenson that "C.B. would not be providing any statement . . . regarding [the] investigation." (*Id.*). On May 25, 2016, Defendant Stevenson arrested C.B. for "(1) count of Rape in the third degree, P.L. 130.25(3), an E-Felony, and (1) count of Criminal Sex Act in the third degree, P.L. 130.40(3), an[] E-Felony," alleging that C.B. "did engage in sexual intercourse and oral sexual conduct with a 15 year old female without her consent where such lack of consent is by reason of some factor other than incapacity to consent." (*Id.* at 7). Defendant Stevenson fingerprinted C.B. and issued to his parents a "Juvenile Appearance Ticket with instructions to contact the Jefferson County Probation [Department]" the next day. (*Id.*).

On September 26 and October 30, 2016, a trial was held before Judge Eugene J. Langone, Jr., in the Family Court of the State of New York, Jefferson County. (*See* Dkt. No. 1-6, at 2–12). Following trial, Judge Langone issued a decision and order dismissing the charges against C.B. and concluding that, while "it is clear that certain sexual acts occurred between the alleged victim and [C.B.]," (*id.* at 14), "there was no clear revocation of consent or lack of consent in spoken form or in the form of actions taken which rises beyond a reasonable doubt in this matter as required by law," (*id.* at 16).

Plaintiffs allege that D.W.'s account of the alleged rape, as provided in her interview with Defendant Stevenson, would have led "a reasonable person to believe that New York State Penal Code 130.40, Criminal Sexual Act in the Third Degree, and New York State Penal Code 130.25, Rape in the Third Degree were not violated as it pertains to the March 12, 2016 event." (Dkt. No. 20-1, ¶ 15). They allege that "contradictions" between D.W.'s account and those of M.S. and G.B. "reflect an investigation conducted in a reckless manner in desperate need of further investigation" and "demonstrate an overreaching, overzealous attempt to prosecute . . . C.B. for

two crimes that were not committed." (*Id.* ¶ 16). Plaintiffs further allege that "[d]espite being apprised of exculpatory evidence that exonerated . . . C.B., Defendant [Stevenson] arrested . . . C.B. under process of law, maliciously and without probable cause" and "falsely arrested . . . C.B. at his own accord." (*Id.* ¶¶ 38–39).

## IV. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5, (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

V.     DISCUSSION

Defendant moves to dismiss Plaintiffs' false arrest and malicious prosecution claims primarily on the basis that "there is ample evidence that defendant had probable cause to initiate the juvenile delinquency charges against C.B." (Dkt. No. 10-1, at 10–16). Plaintiffs respond that "based on the totality of the circumstances," Defendant Stevenson could not have had "a reasonable good faith belief that probable cause existed." (Dkt. No. 15-2, at 8 (quoting *BeVier v. Hucal*, 803 F.2d 123, 126 (7th Cir. 1986)).

A.     **False Arrest**

"A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). To prevail on a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must establish that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (citing *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)); *see Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018). Probable cause "is a complete defense to an action for false arrest" under § 1983. *Ackerson*, 702 F.3d at 19. The Second Circuit has "not yet addressed the question of whether the § 1983 plaintiff has the burden of proving the absence of probable cause or whether the defendant has the burden of proving its existence." *Warheit v. City of New York*, 271 F. App'x 123, 125 (2d Cir. 2008). "There is no need to reach this question, however, because the allegations in [Plaintiffs'] papers themselves show that [Defendant] had probable cause" to arrest C.B. *Ullah v. Office of Dist. Attorney*, No. 07-cv-2687, 2009 WL 2151357, at *4, 2009 U.S. Dist. LEXIS 61607, at *14–15 (S.D.N.Y. July 20, 2009), *report and recommendation adopted*, 2009 WL 2633173, 2009 U.S. Dist. LEXIS 75985 (S.D.N.Y. Aug. 26, 2009).

10

Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852.

Generally, an "arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). The Complaint and accompanying exhibits show that D.W. made a complaint to the New York State Police and signed a sworn supporting deposition taken by Defendant Stevenson. (Dkt. No. 1-3). D.W.'s supporting deposition alleges that C.B. forcefully "grabbed her arms to keep [her] from leaving" the pantry, "pulled down on [her] arms," "put his hand on [her] head," and "pulled [her] head toward his penis" to perform oral sex "although [she] didn't want to." (Dkt. No. 1-3, at 2). The statement further indicates that, although D.W. "said 'no,'" C.B. "didn't listen" and "put his penis into [her] vagina."[4] (*Id.*). Because Defendant Stevenson "had a person . . . claiming to be

---

[4] The Complaint indicates that C.B. was charged with rape in the third degree and criminal sexual act in the third degree. *See* New York Penal Law § 130.25(3) ("A person is guilty of rape in the third degree when: . . . [h]e or she engages in sexual intercourse with another person without such person's consent . . . ."); § 130.40(3) ("A person is guilty of criminal sexual act in the third degree when: . . . [h]e or she engages in oral sexual conduct . . . with another person without such person's consent . . . ."). Generally, "[t]he relevant inquiry is whether 'probable cause existed to arrest a defendant' and 'it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.'" *McZorn v. Endicott Police Dep't*, No. 06-cv-0033, 2008 WL 163581, at *6, 2008 U.S. Dist. LEXIS 3513, at *19 (N.D.N.Y. Jan. 16, 2008) (quoting *Jaegly*, 439 F.3d at 154). Here, however, the Complaint demonstrates the existence of probable cause because the

the victim of a crime, who was willing to sign a complaint charging [C.B.] with rape, the inquiry must focus on whether there were 'circumstances that raise[d] doubts as to'" D.W.'s veracity. *Rae v. County of Suffolk*, 693 F. Supp. 2d 217, 224 (E.D.N.Y. 2010) (quoting *Singer*, 63 F.3d at 119).

There is nothing in the Complaint or attached exhibits indicating that anything known to Defendant Stevenson "undercut [D.W.'s] veracity" such that he was not "entitled to rely on [her sworn affidavit] in establishing probable cause." *Fernandez v. City of New York*, No. 02-cv-8195, 2003 WL 21756140, at *5, 2003 U.S. Dist. LEXIS 13122, at *14 (S.D.N.Y. July 29, 2003). Those documents show that Defendant Stevenson interviewed two other partygoers, G.B. and M.S., who corroborated material aspects of D.W.'s story. (Dkt. No. 1-4; Dkt. No. 1-5). They told Defendant Stevenson that D.W. and C.B. were alone in the pantry for five to fifteen minutes, that D.W. texted M.S. for help, that D.W. was visibly upset afterwards, and that D.W. told them she and C.B. engaged in sexual activity against her will. "[W]hen a putative victim precisely identifies the alleged perpetrator of a crime and there is independent evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator." *Fernandez*, 2003 WL 21756140, at *4, 2003 U.S. Dist. LEXIS 13122, at *12 (quoting *Marin v. Viggiani*, No. 92-cv-3836, 1993 WL 404098, at *6, 1993 U.S. Dist. LEXIS 14056, at *20–21 (S.D.N.Y. Oct. 5, 1993)).

Plaintiffs contend that Defendant Stevenson "lacked a good-faith belief that probable caused existed" because "he ignored exculpatory evidence that was readily available and verifiable." (Dkt. No. 15-2, at 8). Although "under certain circumstances an officer's awareness

---

facts known to Defendant Stevenson indicate "more than rumor, suspicion, or even a strong reason to suspect" that C.B.'s conduct violated the provisions of New York Penal Law as charged. *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983).

of facts supporting a defense—such as knowledge of the existence of exculpatory surveillance footage—can . . . eliminate probable cause," *Alexander v. City of Syracuse*, No. 17-cv-1195, 2018 WL 6591426, at *9, 2018 U.S. Dist. LEXIS 210687, at *22–23 (N.D.N.Y. Dec. 13, 2018), Plaintiffs do not allege the existence of any such evidence.[5] For example, they do not allege that Defendant was aware of information indicating that any of the other attendees at the party witnessed anything contradicting D.W.'s account of what happened in the pantry. Nor are there allegations of any other exculpatory evidence known to the Defendant—physical, circumstantial, or otherwise—contradicting D.W.'s account of C.B.'s conduct during the sexual encounter. While Plaintiffs allege that elements of G.B. and M.S.'s statements conflict with each other in some respects, (Dkt. No. 20-1, ¶ 24), nothing contained within those statements undermines the veracity of D.W.'s account as provided to Defendant Stevenson. Plaintiffs argue only that Defendant Stevenson failed to pursue additional "sources of information that may have been exculpatory in nature" when he "chose to interview only two of the ten witnesses" at the party. (Dkt. No. 15-2, at 9). Plaintiffs do not allege, however, that any of those witnesses actually possessed any exculpatory information. "Once a police officer has a reasonable basis for believing that there is probable cause, he is not required to explore and eliminate every theoretically possible claim to innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).[6]

---

[5] Judge Langone's decision, which is attached as an exhibit to the Complaint, indicates that no such evidence came to light at trial. (Dkt. No. 1-6). Judge Langone found that the Presentment Agency failed to prove lack of consent beyond a reasonable doubt citing to, *inter alia*, trial testimony by D.W. that differed from the sworn affidavit she had provided to Defendant Stevenson. (*Id.*, at 7–8, 16).

[6] As set forth below, the discrepancy between D.W.'s sworn affidavit and Defendant Stevenson's narrative report as to who was on top of whom does not vitiate probable cause with regard to the two preceding non-consensual acts alleged.

In sum, the facts alleged in the Complaint and as shown by the exhibits attached thereto, taken as true, demonstrate probable cause that defeats Plaintiffs' false arrest claim.

### B. Malicious Prosecution

"A § 1983 claim for malicious prosecution essentially alleges a violation of the plaintiff's right under the Fourth Amendment to be free from unreasonable seizure." *Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018). To prevail on such a claim, a plaintiff is "required to show a seizure or other perversion of proper legal procedures implicating his personal liberty and privacy interests under the Fourth Amendment," "that criminal proceedings were initiated or continued against him with malice and without probable cause," and that those proceedings "were terminated in his favor." *Id.* at 24. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Stansbury v. Wertman*, 721 F.3d 84, 94–95 (2d Cir. 2013) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010)). With respect to claims of malicious prosecution, the Second Circuit has held that the burden of proof rests on the plaintiff to show a "lack of probable cause." *Pinsky v. Duncan*, 79 F.3d 306, 312 (2d Cir. 1996); *see also Ullah*, 2009 WL 2151357, at *5, 2009 U.S. Dist. LEXIS 61607, at *14–15.

Probable cause to commence a criminal proceeding exists when the prosecuting officer has "knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (quoting *Pandolfo v. U.A. Cable Sys. of Watertown*, 171 A.D.2d 1013, 1013 (4th Dep't 1991)). The existence of probable cause is measured as of the time the prosecution was initiated based on the facts that the prosecuting officer knew or reasonably believed to be true at that time. *See Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 151 (N.D.N.Y. 2006). "[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision

14

and forwards that information to prosecutors." *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005) (internal quotation marks omitted).

Plaintiffs argue that a lack of probable cause and malice may be inferred from a discrepancy between D.W.'s supporting deposition and Defendant Stevenson's summary of D.W.'s supporting deposition contained within his narrative report. (*See* Dkt. No. 1-2, at 2; Dkt. No. 1-3, at 1). D.W.'s supporting deposition states: "I did get on top of him, and he did try to have intercourse with me, but it still hurt." (Dkt. No. 1-3, at 2). Defendant Stevenson's narrative report, on the other hand, states: "[D.W.] stated that he got on top of her, and he tried to have sexual intercourse with her, but it still hurt." (Dkt. No. 1-2, at 2). The discrepancy does not change the outcome of the Court's probable cause analysis. First, Defendant Stevenson's narrative report indicates that "D.W.'s Supporting Deposition is attached as enclosure #1," indicating that "all case-related documents" forwarded to Jefferson County Attorney Terry Brennan would have included D.W.'s full statement. (Dkt. No. 1-2, at 2–3). Second, Plaintiffs do not allege that Defendant Stevenson's narrative report is inaccurate in any other regard. Third, even assuming the inconsistency between the narrative report and supporting affidavit allows a plausible inference of malice, the preceding lines of D.W.'s supporting deposition, which are summarized in the narrative report, are allegations sufficient to establish probable cause for issuing the juvenile appearance ticket for rape in the third degree and sexual act in the third degree. The statement indicates that D.W. "tried to walk out," but C.B. "grabbed [her] arms to keep [her] from leaving," "pulled down on [her] arms," "put his hand on her [head]," "pulled [her] head towards his penis," and she "performed oral sex" "although [she] didn't want to." (Dkt. No. 1-3, at 2). The statement further indicates that, although "[D.W.] said 'no,'" C.B. "didn't listen," "had [D.W.] turn around," and "[f]rom behind [her] . . . put his penis into [her]

15

vagina." (Dkt. No. 1-3, at 2). "[E]ven reading the facts as alleged in the light most favorable to the plaintiffs[,] there is still probable cause" based on these allegations in D.W.'s supporting deposition, notwithstanding "the inherent 'he said, she said' nature unfortunately present in many cases of sexual assault." *Chodkowski v. City of New York*, No. 06-cv-7120, 2007 WL 2717872, at *6, 2007 U.S. Dist. LEXIS 67822, at *19–20 (S.D.N.Y. Sept. 11, 2007).

Accordingly, the facts known to Defendant Stevenson as alleged in the Complaint and the information contained in the accompanying exhibits demonstrate the existence of probable cause to arrest C.B. and issue the juvenile appearance ticket.[7]

### C. Qualified Immunity

Even if probable cause to prosecute and arrest C.B. did not exist, the facts in the record indicate that Defendant Stevenson would be entitled to qualified immunity because, at the very least, there was "arguable probable cause" to arrest C.B.[8] *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)); *see also Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) ("Arguable probable cause exists when a reasonable police officer in the same circumstances possessing the same knowledge as the

---

[7] Defendant also moves to dismiss Plaintiffs' false arrest and malicious prosecution claims on the basis that Defendant Stevenson did not confine C.B. or otherwise restrict his liberty. (Dkt. No. 10-1, at 8–9, 14). Even assuming, *arguendo*, that C.B. was seized or deprived of his liberty, the existence of probable cause or qualified immunity is a complete defense to both claims. Accordingly, the Court need not address the issue further here.

[8] Although Defendants did not raise the issue of qualified immunity in their motion, Plaintiffs noted, in passing, in their opposition that the Court would have to determine whether the Defendant's "conduct was shielded by the doctrine of qualified immunity." (Dkt. No. 15-2, at 8). Defendant then addressed qualified immunity in his reply, (Dkt. No. 17-1, at 7–9). "Because qualified immunity is an immunity from suit—not merely an immunity from judgment—assertions of qualified immunity should be addressed as early as possible in the judicial process," *Savino*, 331 F.3d at 71. The Court has therefore addressed the issue here.

officer in question *could* have reasonably believed that probable cause existed in light of well established law." (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997)).

Here, the facts alleged in the Complaint and attached exhibits indicate that D.W. told Defendant Stevenson that she performed sexual acts on and engaged in sexual intercourse with C.B. against her will, as described above. Defendant Stevenson, through interviews of two other attendees at the party, independently corroborated parts of D.W.'s account of what occurred. Given the facts available to Defendant Stevenson "at the time of the arrest and immediately before it," *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006), it appears that it was "objectively reasonable for the officer[s] to believe that probable cause existed," *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). *See also Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014) ("In sum, the arresting officers had arguable probable cause to arrest Betts because they were entitled to believe Shearman's accusation of assault absent credible reasons not to."). Therefore, based on the facts in this record, at a minimum, Defendant Stevenson is entitled to qualified immunity with regard to the false arrest and malicious prosecution claims against him.

### D. Plaintiffs' State Law Claims

Having dismissed all the federal claims, the Court declines in its discretion to retain supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Doyle v. Suffolk County*, 786 F.2d 523, 525 (2d Cir. 1986) ("With the federal claim failing at the outset of the litigation, the District Judge properly declined to exercise pendent jurisdiction over the state law claims."). Accordingly, Plaintiffs' state-law

17

claims for malicious prosecution and intentional infliction of emotional distress against Defendant are dismissed.

## VI. LEAVE TO AMEND

In general, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Although the Court is skeptical that Plaintiff will be able to state a cause of action, for the reasons described above, the Court will permit a limited opportunity to amend. Any amended complaint must be filed within thirty days. Any amended complaint will replace the existing complaint; it must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

## VII. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 10) is **GRANTED in its entirety**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiffs' motion for leave to amend (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Plaintiffs may amend the Complaint within **THIRTY (30) days** of the date of this Order, in accordance with the conclusions stated above; and it is further

**ORDERED** that, if Plaintiffs do not file an amended complaint within thirty days, the Clerk of Court is directed to close this case without further order of the Court.

**IT IS SO ORDERED.**

Brenda K. Sannes
U.S. District Judge

Dated: March 4, 2019
Syracuse, New York